**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-10248

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROSENDO MORALES

Defendant-Appellant.

No. 98-10581

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LUIS BETANCOURT

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

March 31, 1999

Before JOLLY, WIENER, and PARKER, Circuit Judges.

PER CURIAM:

Appellants Rosendo Morales ("Morales") and Luis Betancourt ("Betancourt") were charged with possession with intent to distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841 (a)(1) and conspiracy to commit such offense in violation of 21 U.S.C. § 846. Appellants filed a Motion to Suppress all evidence, alleging that the evidence resulted from an illegal search and seizure. The district court denied Appellants' motion. We REVERSE.

## I. FACTS AND PROCEDURE

At approximately 8:50 p.m., on December 5, 1997, Fort Worth police received an anonymous "911" call. The caller reported that two Hispanic males were unloading cocaine from flatbed trucks at a business called Milagro's Botanica ("Milagro's"). Four Fort Worth police officers were dispatched to investigate the call.

Upon arriving at the location at 9:00 p.m., the officers did not see flatbed trucks or Hispanic males in the area. The officers, however, saw a pickup truck parked in front of Milagro's. One of the officers checked the pickup truck's registration and determined that the pickup belonged to an individual with a Hispanic surname. At the scene, the officers heard loud banging noises that sounded like someone opening wood crates arising from a warehouse behind Milagro's.

Proceeding to investigate, one officer went to the back of the warehouse and attempted to look inside. This officer observed the gloves and knees of two individuals as they opened crates. In the meanwhile, the remaining three officers proceeded to bang on the front door. In response to the officers' banging, one of the Appellants asked: "Who is there?" The officers responded in a loud and commanding voice: "Fort Worth Police: Open the door." The loud banging on the door, the tone

2

of voice, its volume, and the authoritative manner unmistakably showed that the officers issued an order as opposed to a request to open the door.

At the officers' order, Betancourt opened the door to the warehouse. The officers immediately rushed in with their weapons drawn and arrested the Appellants. After placing the Appellants face down on the floor, the officers handcuffed and searched them. Inside the warehouse, the officers found two wooden crates each filled with 24 large, silver, duct-taped packages. The packages held approximately 473 kilograms of cocaine. On December 6, 1997, at approximately 12:40 a.m., the officers obtained a search warrant.

On December 16, 1997, Appellants were indicted on two counts: (1) possession with intent to distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841 (a)(1), and (2) conspiracy to commit such offense in violation of 21 U.S.C. § 846. Appellants filed nearly identical Motions to Suppress the evidence, contending the evidence resulted from an illegal search and seizure. After a suppression hearing, the district court found that the officers ordered Appellants to open the door but denied the Appellants' Motions to Suppress.

Pursuant to a conditional plea agreement, Appellants entered guilty pleas to both counts of the indictment, but reserved the right to appeal the denial of their Motions to Suppress. Appellants contend the district abused its discretion in denying their Motions to Suppress. We agree.

## II. STANDARD OF REVIEW

We review the district court's factual findings for clear error and its conclusions regarding the constitutionality of a warrantless search *de novo. See United States v. Tompkins*, 130 F.3d 117, 120 (5th Cir. 1997). Further, the voluntariness of consent to a warrantless search is a finding of fact reviewed for clear error. *See id.*

## III. ANALYSIS

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under the Fourth Amendment, a search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable with few exceptions to this rule. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

A. Probable Cause and Exigent Circumstances

A search conducted pursuant to probable cause and exigent circumstances is one exception to the Fourth Amendment's warrant requirement. *See Steagald v. United States*, 451 U.S. 204, 211 (1981); *United States v. Rico*, 51 F.3d 495, 500-01 (5th Cir. 1995). The district court found that the officers had reasonable suspicion to enter the warehouse based on the anonymous phone call and the surrounding circumstances. The district court then found probable cause existed after officers ordered the Appellants to open the door and after the officers viewed the wood crates and the duct-taped packages.

The temporal aspect for the test of probable cause is whether the anonymous information is reliable under the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 237 (1983); *United States v. Blount*, 123 F.3d 831, 835-37 (5th Cir. 1997). The totality of the circumstances test includes four factors: (1) the nature of the information; (2) whether there has been an opportunity for the police to see or hear the matter reported; (3) the veracity and the basis of the knowledge of the informant; (4) whether there has been any independent verification of the matters reported through police investigation. *See Gates*, 462 U.S. at 235-40.

An application of *Gates* to the facts in this record persuades us that at the time the order to open the door was given, the officers did not have probable cause to conduct a warrantless search. The individuals who made the 911 call did not indicate how they knew the information. The police officers acknowledged they did not see a flatbed truck or Hispanic males. Further, the officers did not see anything outside the warehouse to corroborate the 911 call. While the officers heard noises coming from the direction of the warehouse, the officers admitted they did not spend much time investigating after they arrived at the scene. The facts do not justify probable cause for a warrantless search.

4

In addition to the problem of a lack of probable cause, the officers also did not have exigent circumstances. The government bears the burden of proving that an exigency existed. *See Blount*, 123 F.3d at 837. The district court impliedly found exigent circumstances.[1] We review this determination for clear error. *See Id.* We conclude the district court also erred in finding exigent circumstances.

In *Rico*, we identified a non-exhaustive list of factors that may be considered in determining whether exigent circumstances existed, including: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *See Rico*, 51 F.3d at 501.

In this case, the officers did not face any serious concerns regarding exigency. The record reflects no evidence that the contraband was about to be removed or destroyed. The officers could have waited while a search warrant was obtained with little or no danger to the officers guarding the warehouse. Further, the suspects did not know that the officers were present outside the warehouse. These facts and circumstances do not support the district court's finding of exigency, and therefore, without probable cause and exigent circumstances, the warrantless entry was unreasonable. Absent consent, the officers were without authority to conduct the subsequent warrantless search. The fact that the officers obtained a warrant at 12:40 a.m., some three hours *after* they entered and searched the warehouse and arrested the Appellants, is of no legal consequence.

B. Consent

---

[1] Both probable cause and exigent circumstances are required to establish an exception to the warrant requirement. *See Rico,* 51 F.3d at 501. The district court found probable cause and that the warrantless search was justified. Thus, we believe that the district court impliedly found that exigent circumstances were present.

A search conducted pursuant to consent is another exception to the Fourth Amendment's warrant requirement. *See United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The government must prove, by a preponderance of the evidence, that consent was freely and voluntarily given. *See United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).

The voluntariness of the consent is determined from the totality of the circumstances surrounding the search. *See Schneckloth,* 412 U.S. at 227. Relevant factors relating to voluntariness include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988) (citations omitted). "[N]o single factor is dispositive or controlling of the voluntariness issue." *Id.*

The government concedes, and therefore agrees with the district court's finding, that the police officers ordered the Appellants to open the door, but argues that consent still may follow a police order under the totality of the circumstances. We agree that the mere utilization of words by officers that would reasonably be considered to be a command or order does not preclude the possibility of a suspect validly consenting to a search.

After a careful review of this fact-intensive record, however, we conclude under these facts and these circumstances, the Appellants did not freely and voluntarily give their consent to opening the door and the subsequent warrantless search. The officers clearly issued an order, not a request. Furthermore, the officers' actions – rushing into the warehouse with their guns drawn and ordering the suspects to the floor – do not reflect a situation where suspects have provided their consent to a warrantless search. Under these circumstances, the district court was not clearly erroneous in its finding that the officers issued an order, and therefore, in accordance with the previous discussion, we find that the consent was not voluntary.

## IV. CONCLUSION

Because the search was neither supported by probable cause nor validated by consent, we reverse the district court's judgment and hold that the evidence found must be suppressed. The case is remanded for further proceedings.

REVERSED AND REMANDED.